The Coleman Company, Inc. I'm going to get some sleep every time. Please proceed. Tell me how to say your name. Ennis? Ennis. Ennis. Mr. Ennis. Good morning, Your Honors, and may it please the Court. There are two principal issues that are involved in this appeal. The first, of course, is the District Court's claim construction of the D714 patent. The second issue relates to the judge's decision to strike an expert. The testimony of Peter Bressler, an industrial designer with vast experience in industrial design, over four decades of experience in the field. But industrial design is a really, really big field. I mean, he could be designing the inside of a power plant, right? That is possible. So that's a big, far cry different from designing floaties. This is actually a case I completely grasp the technology in, even though it's a design patent. These two issues, Your Honors, they are not dependent upon one another. The decision in one is not dependent upon the other, but they both are infected by the same problem, and that is that the District Court myopically focused on the title of the design patent itself and then defined or constructed that title as it applies to commercial flotation devices themselves. Doesn't the claim itself, though, say the ornamental design for a personal flotation device as shown and described? So the claim itself refers to the personal flotation device? You don't even have to look to the title? No. It does, Your Honor, say the ornamental design of the personal flotation device. The MPEP directs us that a design patent's title does not define its scope. That's at 1504.04. Just after that, the MPEP instructs an applicant that you are required to identify in the claim the same thing that you identified as the title. If you're going to suggest, then, that if the title ends up in the claim, that that defines the claim, then doesn't that swallow the rule? It does. It swallows the rule that says the title can't define scope of the claim. Therefore, simply by placing the word title in the claim, that doesn't define its scope. The scope of the design patent itself is defined by the drawings and what's depicted in the drawings. Even if we agree that the functional aspects that make this a personal flotation device have to be not considered in the claim construction, doesn't our precedent say you don't get rid of them altogether? You still look at the ornamental aspects of them. That's correct, Your Honor. Perhaps the best example of that is in the recent decision of Ethicon Endosurgery. In that case, particularly, the issue of claim construction was at large. The lower court there had found each and every aspect of the subject claim functional. In your case, take, for example, the round things that go over the arms. Yes, sir. They're functional in a certain sense. But they also can have design aspects in the way they're shaped, their size, their form, and the like. So we have to look at the design aspects, even if there is a certain functional aspect of them as well. That's exactly what the Ethicon Endosurgery case says. That's true. And that is simply a regurgitation of this court's precedent. Because if we didn't do that, like every bottle which is design patented, you would just exclude the whole bottle because it's functional in that it holds the fluid inside, right? That's correct. So one of the teachings, I guess, of Apple versus Samsung also, there was a request there to make a global rule. And the court rejected the concept of the global rule. But nonetheless, the import of construction is to identify the non-functional aspects of the design. It didn't say you have to identify the functional aspects. By using the term except in her claim construction, that's exactly what the district court did. She didn't endeavor to identify the ornamental aspects of those things that she found had some function. Instead, what she did was if it had some function, it was eliminated from the scope of the claim and could not be considered. Is functionality, is that a fact question that should be given deference? It's a great question. It depends upon what it is that is being considered and if the information considered is competent evidence for the purpose. The ultimate issue of claim construction, of course, is an issue that has no deference. It's reviewed de novo. And if there are legal errors that were committed during claim construction and then subsequent factual findings based upon those legal errors, the court also owes those findings no deference either. That's pursuant to the Pantuit decision. But under TEVA, does that change anything here? I don't think so, Your Honor. In fact, I think that in subsequent cases like Shire, the court has been careful to identify that you don't need to focus on those elements. That if you can define the claim without resort to extrinsic material and findings relating to that are not to be considered, are of no relevance to the court. The dispute here truly isn't about the proper construction of the words personal flotation device. Personal flotation device, as we've indicated, isn't a term or an element of the patent's claim. The claim is as stated in the drawings. Personal flotation device is the title, the title of the patent itself. And personal flotation device certainly is not the use or purpose of the claimed article. That use or purpose is to provide buoyancy to the wearer while they're in the water. That is to float or act as a flotation aid. The district court imposed requirements of 46 CFR Part 160 as limitations on the underlying article of manufacture and on the qualifications of any suitable or viable alternative designs. I think that the root cause of the district court's error was the determination that the function of the article was personal flotation device. Personal flotation device is not a function. It's a thing. The article of manufacture itself. An article's function isn't determined by the title of the design patent. It's determined by what the thing does, what is its intended use. If we agree with you that the district court erred below in eliminating certain elements of the design and therefore had the wrong claim construction, how should the case be treated? Well, I think... Go ahead. I'm sorry? Go ahead. I apologize for interrupting. Well, I think that the court can decide this matter on the evidence that's before it. If the court can also reverse and remand back for further proceedings consistent... Is that the question? I guess the question is, would we remand for a new claim construction? Will we construe the claim? There's been a finding of non-infringement here, right? That's true. I think that Your Honors could certainly reverse here and make its own decision based upon the claim construction, construing that de novo. So you're suggesting when you say reverse here, you're saying reverse the finding of non-infringement and remand? Well, the non-infringement was based solely upon the claim construction, and it was once the court... It was stipulated. That's true. There wasn't even a finding. That's correct. Once the court made its claim construction, it was clear based upon that construction that there could be no infringement. So if the claim construction is wrong, the judgment would go away. It seems as if the only thing left to do, the only thing we really could do is remand. I think that the court can decide this issue on the record before it. The court also would be... The infringement issue? No, no, no. Not the infringement issue.  The claim construction. You could construe the claim right here and send the case back. We can reverse the claim construction and direct a new claim construction. Yes, I do. Based upon the record that's before us. So remand is still what has to be done, even if we completely agree with you on the claim construction. Yes. Certainly for purposes of infringement and further questioning of invalidity. I'm sorry. I misunderstood your question. I want to spend a brief amount of time on the court's decision to strike the testimony of Mr. Breslin. I think that there were two issues. Again, the court myopically focused on this term, personal flotation device to title, and said that that didn't necessarily define the pertinent art. The court misread this court's teaching in Sundance. Sundance is a very interesting case where we had a lawyer who was actually serving as a testifier. But even putting this all aside, I mean, your expert admitted he had no expertise in actually developing these kind of wearable flotation devices, right? He's in industrial design. He does a lot of other kind of things. And his only, I guess, relevant experience was he owns a boat or something? No, he's designed boats, Your Honor. He's also designed scuba gear. He's designed all kinds of buoyant materials. Sure. And so it probably wouldn't have been an abuse of discretion to let that in. But why is it an abuse of discretion to exclude it when he specifically said, I have never in my professional capacity defined wearable flotation devices? He said specifically, I'm not an expert on personal flotation devices. On personal flotation devices. That's true. And referring back to the title of the patent. In Sundance, the court recognized that there was a difference between the pertinent art for defining the pertinent art as the field of tarps and covers. Although the patent there was directed to the narrower rectangular segmented covering systems, much more narrow. So the district court failed to follow the teachings of Sundance that led to the error. I will reserve the rest of my time for rebuttal. Very good. Tell me how to say your name, counsel. Yes. My name is Michalka. Yuri Michalka? Michalka. Okay, Ms. Michalka, please proceed. I'm counsel for Apelli Sport Dimension. Thank you for your time today. I would like to respond to Mr. Annis' position with respect to the patent title that being injected into the claim construction. This is an interesting point because, as Judge Stoll pointed out, personal flotation device is a term that's used in the claim description as well. And, in fact, Mr. Annis claims that it should not have been injected in the claim construction, but that is the proposed claim construction that was requested by Coleman. In fact, they requested this. I don't understand how this matters. Because even if we conclude that we can talk about whether these are functional aspects, you still can't just lop off whole parts that might have both functional and design elements. I mean, that's what Ethicon says, isn't it? Are you referring to Judge Hughes on the actual claim construction itself? Yeah. The district court said don't consider the, I guess, the round, floaty parts altogether, right? Sorry. The armbands. Very technical. Right. Correct. She said you can't consider those. In the court's claim construction, the court identified functional and non-functional features. That is consistent with odds-on. Yes, but are you saying that there is no design element at all to the armbands? The court found that there weren't any. The court found that the armbands were ornamental, non-ornamental, that they were functional and dictated by function. Why the armbands, these round thingies— See, this is the error in determining that a certain structure has function. Ethicon says even if it has function, there may still be ornamental aspects to it and that you have to be able to consider that. And the best example of that is the picture. I mean, you could have any kind of number of designs for these armbands. They don't have to be round cylinders. I've seen some where they're like four squares put together. You know, they could be longer, they could be shorter. They can do all kinds. They can have straps, although that might be functional. But those are ornamental aspects, and you can't just exclude the entire structure because you conclude that it has some function. And that's what you did, isn't it? Your Honor, let me explain that point. Those arguments were made before Judge O'Connell, and what Judge O'Connell decided was that you needed the armbands shaped the way it was, which was tapered and round for it to function as a personal flotation device. But that just seems wrong. There was no evidence contradicting it. That seems like an improper claim construction. There was no evidence contradicting it. But the problem is she's adding in things that aren't in the design patent. The design patent should be, I think we said in Egyptian Goddess, mostly you should just look at the picture. And there's nothing in the picture that says this is completely functional. What the judge did was, and the district court did, was looked at the article manufacturer, in this case, was a personal flotation device. There's no dispute about that. And for a personal flotation device to function as intended, it has certain requirements, mandatory safety requirements. Do you believe that Apple v. Samsung says that you can't just eliminate whole elements? I don't believe Apple v. Samsung says that. In fact, I think Apple v. Samsung says that the Richardson case does not say that, does not state a rule that a district court has to eliminate entire elements from the claim scope. I think that's what Apple v. Samsung says. Well, what about odds-on? In odds-on, you said that this case is similar to odds-on, or what the district court here was consistent with odds-on. But in odds-on, what they said is that the football is functional, I guess, and the fin is functional. You've got to agree that those have functional aspects. But they didn't just completely eliminate any particular functional elements of the rocket football. And instead, this court said you've got to look at the overall design. You don't just eliminate parts. That's correct. And so here, if you were following odds-on, you wouldn't eliminate the armbands. Instead, you would look at the armbands in combination with the torso portion, in combination with the second armband. And that's exactly what the court did in this case. No, I think the court eliminated the armbands. You mean in the claim construction itself? Yes. So if you read the claim construction, the court said ornamental design of a personal flotation device except the following features are functional. So the court looked at those features in combination of the overall design. And that's what the court did in the PHG case, in odds-on, and that is a typical way that the courts, in considering functionality, look at whether something is functional. They look at the features, and they look at it in combination of the overall impression of the design. But even after they determine that something has functional aspects, they don't just lop off that element saying this is functional. I don't know of any cases that have done that other than what the district court did here. Actually, there are some cases where functional aspects were not included at all. So, for instance, in the odds-on case, if you look at the description of the claim construction, it's very detailed. And what the court was trying to do there was differentiate between a tossing ball and a ball that tosses like a football but flies faster. That was the distinction the court made in its claim construction. It was a very detailed claim construction to ensure that the court captured the ornamental aspect of it and the functional aspect. But it also said it looked at the overall rocket-like appearance of the design. It didn't eliminate the fin or the football. It didn't eliminate but emphasized what the patent scope is. How would that have been appropriate to do here? Instead of eliminating the armbands, talking about the overall design of the whole design of the PFD. I think the court was correct in determining that the armbands itself was functional. There was no ornamental aspect of it. And the reason is, and Judge Hughes might be right, there might be other designs out there that could have been used,  But why does there have to be evidence? I mean, the evidence is they made a particular design choice in the picture they showed. And unless it's purely functional and it has to be shaped that way, and it only has a functional result, then the rest of it's a design. That's absolutely correct, Your Honor. That was the only way that the armbands hit. But that's not true. I mean, it's not in the record, but we all know that the armband doesn't have to be in this specific circular shape, in the specific size it is, to be functional as a flotation device. The size was not issued here, but the shape was. And the only evidence before the court, testimony of the inventor, testimony of the only expert that testified, as well as the utility patent application, stated that the armband had to be shaped this way, in a way that was tapered and round. And the reason is this. Let's assume you have a stack of documents. And when you fold the stack of documents in a circle, it becomes tapered. That's the way that these armbands are manufactured. The evidence says it has to be round and tapered. Yes. Has to be, in order to function. Yes. My goodness, I've had my children in the pool with these little ones with wings on them. They actually have wings. My daughter loves them. They're not round and tapered. I must be a terrible mommy, because it must not be functioning properly to keep her afloat. Your Honor, I'm aware of those as well, and they are not personal flotation devices. And if you look at my personal… But you can't be possibly saying that the only way it's a personal flotation device that actually works is that it is this round, circular tube. It has to fit securely. There are many requirements, safety requirements. Why can't it be square? In shape. What about the picture? And still function, to float. May I explain? What about the pictures on page 42 of the blue brief, for example, just to give some context? Are those the alternative proposed? Yes, they're the alternative. With Kirner and Westman. Page 42, Your Honor? 42 of the blue brief. These are Kirner and Westman. Is that right, Your Honor? Yes. So these are not personal flotation devices. It was made clear that the only evidence before the court was testimony of Ms. Balistrieri on this point, and the utility patent application, which made clear that these are not… Well, then why the heck would you stick your children in these things if they're not to keep them afloat? I mean, these are not pretty. They're not decorative. They don't have little wings. I mean, what is the point of these things if they're not flotation devices? Judge Moore, to be clear, these are not personal flotation devices. I… Yes. How? They have a special meaning in the industry. Personal flotation device is something that is mandated. It's by U.S. Coast Guard standards, by federal regulation. Why? Because it's a life-saving device. It's not a swim aid. It's not a bathing aid, which these are. It is a life-saving device. When thrown into the water in an emergency situation, it saves you. And that's why the armband needs to be tight. So this is why the whole claim construction thing is so critical to your case and to opposing counsel's case, because if personal flotation device is limited to U.S. Coast Guard regulation, it keeps these things out, and these things show different shapes. I now get it. That's correct, Your Honor. And the important point there is, as the judge pointed out, Judge O'Connell, in the district court case, in the order, that was unrebutted. Coleman did not present any evidence that a personal flotation device need not meet U.S. Coast Guard standards. May I answer any other questions? Okay, thank you. I'd like to make a final point, if you don't mind. The problem we see with what Coleman is requesting here is that Coleman would like for this court to ignore the nature and intent of this device as a personal flotation device. It's not a swim aid. It's not a buoyant aid. It's not a buoyant device. It's a personal flotation device. And so what is seeking protection, a patent protection, is on something that is mandated by federal regulations and U.S. Coast Guard standards. But it's not seeking patent protection on the fact that it functions as a personal flotation device, because that would be a utility patent instead of a design patent. They're just seeking a design patent. I don't understand why you're arguing for this extreme claim construction. Anyway, I assume your products don't look exactly like this. Your Honor, they were seeking patent protection on a personal flotation device, not a buoyant aid, a personal flotation device. And as the court found— And they can't get a design patent on the utility of a flotation device. So they're getting a patent on the elemental parts of a personal flotation device. And it is true. But here, what was before the court was claim construction. And the determination, the key determination, was functionality. Were there features that were functional that were not ornamental? And what the court determined were that the armbands and the attachments tapering, these were functional features and not ornamental. I don't recall, but do you have certain cases that you rely on for the position that this should be limited to a personal flotation device by virtue of the fact that it's in the claim or the title argument? Or what case law do you have to support the idea? Even Coleman admits in page 7 of their reply that in order to determine functionality, you need to determine what the article of manufacture is and its intended use. Sure, that helps you to figure out whether something's functional or not. So it's undisputed here that the article of manufacture is personal flotation device. That is, and it's undisputed again, governed by U.S. Coast Guard standards that have standards on buoyancy, secure fit, and performance, and which Ms. Balistrieri said these features were necessary and dictated by function. Do you have an example of what your accused products look like? Yes. It's on our brief. It is page 6 of our brief. So you're right, Your Honor, there is quite a bit of difference. Are all of your products like this? Do they all have, you know, over the, I don't even, over the shoulder straps? Those are shoulder straps, correct. I just, I mean, frankly, it just baffles me why you're wasting our time on this extreme claim construction when your things don't look anything like the design patent here anyway. Your Honor, we filed a motion for summary judgment on non-infringement, and we had to— But you also, I assume, urged the district court to adopt this claim construction. Yes, I did. Even, that's correct. But we filed a motion for summary judgment, which the court did not hear because Coleman requested that the case be dismissed so that it could appeal the court's decision on claim construction. So we want to be heard on non-infringement. Under this extreme claim construction. I mean, even if you go with their claim construction, aren't you going to win? I believe so. I mean, yours is a vest. Theirs is a band. It's so, I mean, it's so completely different. The only thing that is relatively similar is the arm bands, actually. Which are functional in our perspective. I get it. And that was the court's decision. Your Honor, we believe that this case should not have been brought at all, and we were hoping to get the court's final determination on non-infringement and validity. But Coleman decided to appeal this decision. We don't want to waste the court's time, but the court made a claim construction, and we believe it should be affirmed. Okay. Mr. Annis, you have a few minutes of rebuttal left. I mean, even if you prevail with us, Mr. Annis, if we find the district court made some mistakes, I mean, the accused product, it doesn't look anything like yours. The patent claims. What's going on here?  And the vest dominates the appearance of the item. I hope you're not going to turn around and argue that the over-the-shoulder things are functional and therefore have to be disregarded, are you? Locked off. Locked off. Your Honor, the devices are exceedingly similar. They have all aspects the same, except for the straps that go over the shoulders, which are just fabric. It's just a fabric fastener. So how are you going to get that excluded, though? I mean, the design patent has to be essentially copied. It has scope, and it has scope in the eyes of the military. You're going to turn around and argue exactly what your friend is doing to us now and say you don't look at those because those aren't part of the design. No, Your Honor, that's not it. Because they don't achieve the floating. Because they're just fabric. Right, they're not part of the location device. Right, they're just for maids. Your Honor, I want to get back to the concept of what is in a name, the title. Now, Ms. Balistrieri, a sport dimensions expert, admits that if this was called a swim mate, it would not be guided by and it wouldn't be limited by U.S. Coast Guard approval. The same thing would hold true if you said life jacket. If you used the term life jacket, that's not a U.S. Coast Guard regulated term. So by focusing myopically on personal flotation device, you have incorporated all of those limitations into the claim inappropriately. That is an error of law. Judge Stoll, you had indicated about what happened in the odds-on case and even though certain aspects were found to be functional, weren't they nonetheless construed? And the answer is absolutely that is true. That the fins themselves were described in detail by the court in its construction that was upheld on appeal. Judge Sheeves, you had talked about the Kerner and Westman patents. Well, sport dimension had another expert, an expert that was going to testify on the issue of validity. And the very references that you cited to your honor, the Kerner reference, the Westman reference, and even the Kelso reference, references that the district court refused to even look at or consider, those were used by that expert to say an ordinary designer, sorry, a designer of ordinary skill in the art of this particular patent would look to those items to cobble together and create the design of the claim. So if these references are relevant to determining how an ordinary skilled designer in this pertinent art would come up with the design claim in the D714 patent, how is it that those same references, you couldn't change the look or feel and for the device to continue to work as intended? Okay. I thank both counsel.